The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Laura K. Mavretic, now Commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the former Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At all relevant times the parties herein were subject to the Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer.
3. The insurance workers' compensation insurance carrier is The Travelers Insurance Company.
4. The plaintiff-employee's average weekly wage was $250.00 per week.
5. The plaintiff-employee contends that he sustained an injury by accident arising out of and in the course of his employment with the defendant during the first or second week of November 1992.
6. The plaintiff-employee was out of work in 1993 for all but 15 days as a result of his medical condition, and was out of work every day of 1994 to the date of the hearing of this action. The plaintiff contends that he is permanently and totally disabled and unable to work as a result of his injury.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the former Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. In November of 1992 plaintiff-employee was a 51-year-old male employed by the defendant. He began work for the defendant in August of 1992.
2. Plaintiff-employee's job involved assembling metal slides manufactured by the defendant-employer for use in tables and drawers.
3. Plaintiff's work in assembling these metal slides often involved pushing and bumping metal parts together with substantial force. This action often produced small slivers of metal shavings around plaintiff's workplace area. Often these tiny metal shavings would be attached to plaintiff's clothing, including his socks, when he finished each shift.
4. Around the first or second week of November 1992, one morning when plaintiff got out of bed to go to work, he felt a sharp pain in the heel of his left foot. Thereafter, plaintiff began to have continually worsening problems with his left foot. For the next several weeks the pain began to worsen and plaintiff began to "favor" his left foot by walking in a hobbling manner. The pain in his left foot began to throb and he started putting a pillow under his left foot at night to prop it up. The sore area in plaintiff's left foot became very red in color. Plaintiff continued to endure the pain he felt in his left foot until it was unbearable, then he sought medical attention.
5. During the period of time following the first or second week of November 1992 when plaintiff first noticed the pain in his left foot, plaintiff's wife, Brenda Smith (who testified), was very much aware of the problems plaintiff was having with his left foot and she observed that these problems were worsening.
6. A co-worker of plaintiff who testified stated that he, too, observed at work that plaintiff was having problems walking and noticed that he was, in fact, walking with a limp.
7. One week before New Year's Day of 1993 the pain in plaintiff's left foot became even worse, and he was hardly able to sleep at all the night of New Year's Eve due to the pain in his left foot. On the morning of January 1, 1993 plaintiff and his wife noticed a pink-colored strip running across his left foot and ankle from the original place of soreness. On January 1, 1993 at the insistence of his wife, plaintiff went to the emergency room of Iredell Memorial Hospital to seek relief from the pain he had been experiencing.
8. In the emergency room of Iredell Memorial Hospital on January 1, 1993 plaintiff was seen by Dr. Ronald Paul Hargrave. Dr. Hargrave ordered an x-ray of plaintiff's left foot, which showed a thin linear metallic density present in the soft tissues of the plantar aspect of the plaintiff's foot in the hind foot region.
9. Upon obtaining the x-ray on January 1, 1993, Dr. Hargrave, in the emergency room of Iredell Memorial Hospital, made an incision in plaintiff's left foot and with a pair of tweezers removed a thin metallic sliver, which he placed on a piece of gauze and gave to the plaintiff. The emergency room records of Dr. Hargrave and Iredell Memorial Hospital have been received into evidence.
10. Within just a few days after January 1, 1993 plaintiff delivered the tiny metal sliver wrapped in gauze to Cindy Anderson, office manager of the defendant-employer, Acme Metal Slide, Inc.
11. Cindy Anderson then placed the tiny metal sliver wrapped in gauze inside an envelope and placed it in plaintiff's personnel file where it remained until April 11, 1994. On that date plaintiff, on the advice of his attorney, went to the defendant-employer's office in Statesville, N.C. and requested of Cindy Anderson that she turn over the metal sliver wrapped in gauze to him. In response to this request, Cindy Anderson obtained his personnel file and turned over to him the envelope containing the tiny metal sliver wrapped in gauze, which had been previously delivered to her shortly after New Year's Day of 1993 and maintained in plaintiff's personnel file since that date.
12. Upon obtaining the envelope with the tiny metal sliver wrapped in gauze on April 11, 1994, plaintiff on the same date delivered it to his attorney, Edmund L. Gaines, who maintained possession of the tiny metal sliver until the date of this hearing. The metal sliver was received into evidence, exhibited to witnesses, and was viewed by the former Deputy Commissioner Laura K. Mavretic. By stipulation of the parties, custody of this tiny metal sliver wrapped in gauze has been maintained in the custody of the plaintiff's attorney, Edmund L. Gaines, since the date of the hearing.
13. The tiny metallic sliver which was removed from the plaintiff's left foot is similar in type to the metal slivers produced in the area of plaintiff's workplace in the assembly of metal slides; and is similar to tiny metal slivers which were often attached to plaintiff's clothing upon his coming home from work; and was similar to tiny metal slivers which plaintiff's wife testified she had on occasion seen plaintiff pull out of his fingers upon coming home from work. The Full Commission finds from the greater weight of the evidence that this tiny metal sliver which was embedded in plaintiff's foot and removed by Dr. Ronald Paul Hargrave on January 1, 1993 came from plaintiff's workplace through his employment with the defendant, Acme Metal Slide, Inc., and became embedded in the plaintiff's foot sometime in the first or second week of November 1992.
14. The embedding of the tiny metal sliver in plaintiff's left foot in the first or second week of November 1992 constitutes an injury by accident arising out of and in the course of plaintiff's employment with the defendant, Acme Metal Slide, Inc.
15. Subsequent to the removal of the metallic sliver from plaintiff's left foot on January 1, 1993, his left foot continued to hurt; and the plaintiff continued to experience swelling and redness in the area of the incision which was made to remove the metal sliver on January 1, 1993 in the emergency room of Iredell Memorial Hospital.
16. On January 8, 1993 on referral, plaintiff saw Dr. James Serene, orthopedic surgeon of Statesville, N.C. On that date Dr. Serene noted redness and swelling in plaintiff's left foot in the area of the incision made by Dr. Hargrave on January 1, 1993; and on January 8, 1993 Dr. Serene proceeded to trim out some dead tissue in the area of this wound.
17. The pain and swelling in the plaintiff's left foot continued; and on January 22, 1993 he saw Dr. Serene who made plans at that time to admit the plaintiff to the hospital for debridement and clean-out procedure with respect to the "wound" in his left foot resulting from the emergency room incision on January 1, 1993 to remove the metal sliver.
18. On January 26, 1993 Dr. James Serene admitted the plaintiff to Iredell Memorial Hospital for debridement and clean-out procedures. His operative finding indicated necrotic tissue within about one centimeter found in a small sinus tract, which is an area of infection described by Dr. Serene in his deposition as "like a small tube" going to the plantar, or the bottom of the foot. He stated this appeared to be where the plaintiff initially had the puncture wound. Dr. Serene packed it open at that time in order to allow for drainage and for healing. Plaintiff was discharged from Iredell Memorial Hospital on January 30, 1993.
19. Plaintiff's pain and swelling with respect to his left foot continued to worsen; and he saw Dr. Serene on February 5, February 26, and March 19, 1993. Dr. Serene testified that due to the plaintiff's long-standing diabetic condition, his circulation was only a little better than half of what it should have been.
20. Dr. Serene then saw plaintiff on April 15 and April 22, 1993. On April 22 Dr. Serene found that plaintiff's infection had increased.
21. On April 29, 1993 Dr. Serene again admitted plaintiff to Iredell Memorial Hospital and upon exploration found that the infection had gone into the deep tissues of plaintiff's foot and up into his lower leg. As a result of these findings Dr. Serene was of the opinion that plaintiff's infection was now life-threatening, and he proceeded with an amputation of plaintiff's left leg just below the knee.
22. Dr. Serene opined and the Full Commission so found that all of the treatment that ensued from plaintiff's injury by accident, including plaintiff's amputation of his lower left leg, was the result of the metallic object found lodged in plaintiff's left foot.
23. In May 1993 plaintiff was fitted with a prosthesis which was to help plaintiff adjust to not having a left leg.
24. Dr. Serene opined that plaintiff would be out of work possibly until January 1994. However, in November 1993 defendant-employer offered plaintiff a sedentary job in his home making the same or greater wages. However, plaintiff unjustifiably refused.
25. Finally, plaintiff was released to return to work by Dr. Serene in December of 1993. Plaintiff has not worked or sought employment since his release to return to work.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident arising out of and in the course of his employment in the first or second week of November 1992 when a tiny metal sliver, created at his workplace in the assembly of metal slides became embedded in his left foot. N.C.G.S. § 97-2 (6).
2. As a result of plaintiff's injury by accident, the plaintiff was temporarily totally disabled from work through November 30, 1993. Plaintiff is entitled to temporary total disability workers compensation benefits pursuant to the North Carolina Workers' Compensation Act from January 1, 1993 through November 30, 1993 at a rate of $166.66 per week with the exception of 15 days that he worked during that time. N.C.G.S. § 97-29.
3. Plaintiff is entitled to total permanent disability benefits at a rate of $166.66 for 144 weeks for loss of left foot pursuant to the North Carolina Workers' Compensation Act. N.C.G.S. § 97-31.
4. Plaintiff is entitled to the payment of all medical expenses for treatment resulting from his accident by injury as well as any further treatment which tends to effect a cure, give relief, or lessen his period of disability, as well as payment for any prosthetic devices which may aid and assist his ability to walk. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. The defendants shall pay plaintiff temporary total disability from January 1, 1993 through November 30, 1993 at the rate of $166.66 per week with the exception of 15 days that plaintiff worked and subject to attorney's fees hereinafter approved. The compensation has accrued and shall be paid in a lump sum.
2. Defendants shall pay to plaintiff $166.66 per week for 144 weeks for loss of left foot for permanent partial disability compensation subject to attorney's fees hereinafter approved. The amount of this portion of the award has accrued as of the date of the entry of this Opinion and Award and shall be paid in a lump sum.
3. The defendants shall further pay all medical expenses for treatment of the plaintiff which shall tend to effect a cure, give relief from pain or lessen the period of disability, including any prosthetic devices which might reasonably be necessary to assist the plaintiff in walking.
4. A reasonable attorney's fee of twenty-five percent is hereby approved for plaintiff's counsel, Edmund L. Gaines, and shall be deducted from the sums awarded above and paid directly to counsel.
5. The costs are assessed against the defendants.
FOR THE FULL COMMISSION
 S/ _________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _________________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 5/10/96